Al, 2018, 18, 17, 19, 20, 21, 22, 23, 24, 25, and 26. Mr. Edmonds, when you're ready. May it please the Court. There's nothing abstract about the apparatuses and methods of using those apparatuses in Selspin's patents. And if you look in particular at pages 11 through 22 of Selspin's brief, we have specific diagrams to assist the Court in understanding each of these concrete steps. The unconventional mobile application, unconventional combinations, and these technical improvements are specific enough to where this should not be an abstract idea. And some of the key concepts are that you have an internet-incapable data capture device, for example, a camera, you transfer data to an internet-capable mobile device, such as a mobile phone. But it has to be over a previously-established short-range paired connection. That's done through request-response, through polling, or through event notification. The claims also have that you encrypt the pairing, so you create a trusted device for this intermediate device using a cryptographic encryption key in pairing that you cryptographically authenticate. Just remind me, the patent acknowledges, doesn't it, that Bluetooth was not something it was inventing. It was, by the time of the filing, around. And everything that you're now describing is just the way Bluetooth works. No. Bluetooth was around, but the- It's communicating with some other device. Maybe it's encrypted, maybe it's not. But certainly, encryption of stuff was an absolutely conventional way of communicating. There was nothing conventional about these ways. There's a dispute between the parties, a factual dispute, as to whether there was any event notification, or polling, or request-response over a paired Bluetooth connection. What was conventional was that, for example, in the Kennedy device, that you just connect, blurt it out, and then disconnect. Having the paired connection was deemed unconventional, and it's discussed in the prosecution history, and they called it out as being unconventional because they thought, well, that would cost too much battery. But actually, cell-span, part of its invention is part of the battery savings that comes into place now that you're dealing with non-native data. And non-native data just simply wasn't transferred over Bluetooth connections up to websites, just simply wasn't done. So now you have this- Your argument really is at step two, then. It's not a question of whether sending data is an abstract idea, but the fact that you're saying this was a novel and unconventional way of effectuating that. Well, it's both, because under step one, if you have a technical solution, and if you have something that's specific and non-generic enough, then it should pass step one as well. So- So what do you say under step one that the patent is directed to? So it is directed to, and I'll summarize because we have four different independent claims we're talking about. So it is directed to transferring data from an internet-incapable data capture device to an internet-capable mobile device over a previously established, paired short-range wireless connection through request-response polling or event notification. In other words, it's transferring data. It's transferring data by a means that you didn't invent, Bluetooth. The request-response polling and event notification over an already paired Bluetooth connection was invented. The cryptographic encryption of the connection was invented. This cryptographic pairing was invented. The cryptographic authenticating identity to mobile device was invented. And also, I hadn't got to the- So that's why, isn't your better argument that the ordered combination of these steps was itself unusual, even if the methodologies or the things that you used to do it were already known? Well, we certainly made that argument. If the court deems it the better argument, then the court may certainly do so. I don't know, you tell me what your better argument is. Well, I think both arguments should be sufficient to overcome this ruling. But I think that they're both solid arguments in accordance with the case law and the facts. And what I didn't get to was that we have this trusted intermediate device, and it's translating to HTTP in transit, adding user information, adding the website destination information. That just simply, that's another thing that itself's been invented. What it's juxtaposed with the conventional would be a router, which just simply forwards the information. But why isn't the right juxtaposition the device like the computer that the previous sort of exercisers used to type in the information into or plug something into, that is, some device previously was adding all of the necessary transport information, HTTP and others. Well, now this is just doing it using basically the Bluetooth device as a substitute for the computer. Well, the conventionality would be to have the capture device itself with all this functionality, which uses a lot of battery, which requires a lot of hardware, which makes the capture device expensive. And also, you don't necessarily want all this. I thought one of the conventional devices was the camera that takes a bunch of photos and you pull out the little card and then you put the card into a device that's already hooked up one way or the other to the internet. It really doesn't matter how. That's another convention is that you'd use the card. And that device, that's the one that you put the little photo card into, is doing all of this setting up of HTTP and so on that you're claiming here. So the only thing that's different is that the connection between the camera and the internet is now no longer the computer, but is a Bluetooth device. Well, it is a Bluetooth-enabled. It is an already paired Bluetooth connection, which has substantial benefits. And it's something going on over that already paired Bluetooth connection that hadn't gone on before, namely this request response, event notification, and polling. In addition, the prior art you're talking about, it didn't talk about how native data was, you'd add user or website information at the mobile device. That's just simply not, these are things that Celspin invented. The convention would be that all this would have been done at the capture device, and you wouldn't need to do it. Well, that's one of the conventions, but a different convention is the one that I just described. Well, the one you described is described in- I thought that's actually described in the patent. It is. You don't have to move from the camera some information by hand or otherwise into a device that's actually connected to the internet. By router, by DSL line, by whatever. But the patent doesn't describe that prior art method as converting to HTTP in transit, as adding user information in transit, as adding the website information in transit. And in addition, you're just focusing on the physical connection, but that still begs the question of the inventiveness and the benefits that flow from that inventiveness of using the already paired Bluetooth connection so you know that the device is there. The physical thing you pull out of the camera can't do the automatic formatting and the other things that you're saying can be done through your system, right? There's no teaching in the patent that it could do that. There's no teaching in the patent. So the baseline we have for conventionality is that the formatting is done on the capture device and that this, the one that's in the specification is essentially a router which is passing along the information. But as we've distinguished, there's a big difference between a router and what's happening here where you're not just passing along native data, you're changing the nature of the data and you're adding, you're changing it to HTTP and you're also adding user and website information. And, you know, the one way to look at it is the benefits that flow from these technical improvements. And one side can say we think that's conventional, one side we can say we think it's not. What Cellspin has laid out what the conventionality was. And here that when you juxtapose the invention with what's conventional, you see that it's not conventional and you see all these benefits that flow. And one error that the district court made was the district court just disregarded the facts that Cellspin had, that Cellspin had pled and that's in violation of Berkman and the Atrix. And that error alone should be justification for reversal. The district court should have properly weighed those facts, she just didn't, she misread Atrix. The district court believed that if a benefit wasn't or if an improvement wasn't called out as a benefit or improvement in specification, then you can't assert that fact in a complaint. But on a rule 12, you certainly can and Atrix says that you can. That error alone should require reversal so the district court can probably consider all the facts and re-weigh. I'll reserve the rest of my time, thank you. We will hold it for you, Mr. Edmonds. Mr. Panikowski. Good morning, your honors and may it please the court. Stanley Panikowski on behalf of all appellees. Can we start where he ended up because that's my biggest problem here is the district court committed some clear legal errors. I mean, her claim that Berkheimer doesn't apply because this is a motion dismiss and Berkheimer was at the summary judgment stage is just kind of silly. I mean, in fact, it should apply more affirmatively. And the claim that you have to have all the benefits called out in the specification is completely inconsistent with Atrix which says that you look at the allegations in the complaint and you take them all as true. So why aren't those two things just enough to say that we should remand here for the proper application of the law? Your honor, those alleged errors in the district court's opinion are not enough for a remand here because this court sits to review judgments and not opinions and review here is de novo. And here your honor- Did you argue to the court that Berkheimer didn't apply because this was a motion to dismiss? No, your honor, we did not make that argument. Your honor, we did not make that argument. The rule of Berkheimer is an application of Twombly and Iqbal to the 101 context. Berkheimer is a summary judgment case? Yes, your honor, Berkheimer is- Atrix is an application of Iqbal and Twombly. Yes, your honor, Atrix and Berkheimer stand for the same principle, applying it at different procedural stages of the case, but the principle is the same at summary judgment and at the pleading stage. Taking Atrix, applying it at the pleading stage, the Supreme Court- So you take all the allegations in the complaint as true? Yes, your honor. All right, and in the complaint they allege that there were multiple benefits, most specifically that if you have this established connection, one that had never been done before, you actually can simplify the capture device or the camera in this case, right? No, your honor, what is going on here is that the court must take as true all factual allegations and then determine under Iqbal whether the complaint states a plausible claim for relief. Okay, so that factual allegation is true, that these standard systems were put together in an unconventional way to achieve an unconventional benefit. Why wouldn't that be enough to at least get passed a motion to dismiss? Your honor, for several reasons. First, that is not a factual allegation. That is simply applying the conclusory legal label of unconventional to these alleged benefits. Second, your honor, Iqbal says that the reviewing court in determining whether a claim has been plausibly alleged has to draw on its judicial experience and common sense. And what we learned from Atrix and Berkheimer is that the court has even more than that in a patent case with a section 101 issue. The court has the patent, the specification, and the claims. And the court has repeatedly taught in Berkheimer, in TLI. You were listening to Mr. Edmonds and he recited four or so specific things of a relatively concrete nature or a relatively specific nature anyway, that he says were unconventional. Can you address each and every one of those? Because if he has one, then he gets to win on 12b-6, doesn't he? No, your honor, simply having- 12c, I forget, most of these are 12c. Right, your honor, that is not correct because the inventive concept test of Alice is not simply a benefits test. What you have to do is- I'm sorry, I'm sorry, let me focus it. Yes, your honor. Put aside benefits, talk about specific techniques that he referred to as being claimed here that weren't conventional. One of them, he used the term ACT, those kinds of things. Forget about whether they were beneficial. Just talk about the specific techniques that he recited. Right, your honor, none of those specific techniques, whether they be battery savings or using HTTP protocols or using an already paired Bluetooth connection, none of those techniques have been plausibly alleged to be improvements in computer functionality itself. Well, there is a CERT, a two-step, two-device process, right, that they say was never done before. And then they claim that those create benefits like being able to make the capture device smaller, for instance, the camera. Why wouldn't that be enough? Your honor, because you cannot plausibly infer those alleged benefits from the patent, nor, even if you could, are those improvements to computer functionality itself. When we take a look at the specification, as Berkheimer teaches, in addition to the court's other cases that Berkheimer- I want to take a look at the amended complaint. Yes, your honor. So when we take a look at the amended complaint and we have allegations of battery savings, there's nothing- I'm gonna sound like a broken record. Sure, your honor. Can you, for a minute, forget about the benefits and talk about the techniques that are asserted to be unconventional, which maybe have those benefits, but I'm interested in the techniques, not the benefits. Yes, your honor. So starting with the already paired Bluetooth connection, there is nothing in the patent that describes using an already paired Bluetooth connection as unconventional. Even if the amended complaint were to allege that it's never been done before, this court has made clear that simply because something may be alleged to be novel or non-obvious doesn't make it an unconventional improvement to computer functionality that you need to survive Alice Step 2 at the pleading stage or any other stage. What we have in the patent, your honor, in terms of the description of the already paired Bluetooth connection, you have the order of steps in the claims where it says you pair the Bluetooth connection, then you transfer data that was acquired after the Bluetooth connection was established. Alice says you have to search for an inventive concept to pass Step 2. Does the amended complaint or the specifications say that the pairing of the two devices was unconventional? Your honor, the amended complaint does use the conclusory label unconventional to describe the already paired Bluetooth connection. But we need to look at- Then he referred to, Mr. Edmunds referred also to polling. I'm, I don't know, whatever this ACT business is. Event notifications, the use of HTT transfer protocols. And your- Was he referring to HTTP or- HTTP, your honor. Oh, I misheard it as HTTP. And your honor, taking a look at all of these, so the already paired Bluetooth connection, when we look at columns three and four at appendix page 287 of the 794 patent, all we see is a description of how the Bluetooth protocol works. And there's no hint whatsoever that there's anything unconventional. Any- Is there a hint in the amended complaint? Your honor, there's a conclusory label in the amended complaint, but there is not a hint in the sense that there is not a plausible factual allegation that is in any way tethered to the claims or specification. Alice sets forth a rule where you cannot overcome 101 simply by artful claim drafting. If Burkheimer and Atrix- It seems like you keep talking about step one, and I think the proper focus here is on step two. And in step two, they say there's a particular pairing of these conventional devices that accomplishes something that was unconventional. And that's more like BASCAM, or BASCAM or Thales, right? I mean, in those, whether these patents might be obvious for some other reason, the question is, can 101 do this much heavy lifting for you? And I'm just not sure it can, the way that the description, both the way the claims are recited and from what the complaint says. Your honor, you're correct that this is primarily a step two inquiry, but 101 need not do very much here. And this court has already done all the work that's needed to decide this case in TLI, electric power, Affinity Labs. This case is unlike BASCAM, your honor, because in BASCAM, the patent specifically took- But in TLI, we specifically said that the patent had nothing to do with how to combine a camera with a cell phone. Correct, your honor. And this patent does have something to do with combining the capture device with ultimately the internet, right? Yes, your honor. And then conducting the search for the inventive concept at step two, we look at the patent and we say, what does the patent say is the alleged inventive concept? And the patent says over and over again, it is to take manual steps in a process and using conventional technology, described at column nine, lines 37 to 40, as pervasive, flexible, and capable enough of achieving the desired tasks of the system. So purely functional results-oriented language, and all that we do is that instead of unplugging the memory stick from the camera, walking over to a computer, plugging it in, and then typing at a keyboard to upload that data to a website, all that you do is use conventional, preexisting, routine technologies in order to automate that process. And this court has said over and over, your honor, in the Capital One cases, internet patents, Affinity Labs, electric power, OIP technologies, Symantec, that if you simply apply conventional technology to previously manual steps, so that the user can save time performing them, that is not an inventive concept. You understand, I think, that for current purposes, there's no dispute about the principle that you just articulated. The question is, how does it apply on this record, which includes these patents and the amended complaint? So everything here is about the specifics of the complaint, and you keep wanting to raise the level of generality to recite the general principles, which doesn't seem to be very helpful. So, your honor, you have to view the amended complaint in the context of the patent. You cannot simply make allegations out of thin air, from which you cannot draw a plausible. But even the patent itself criticizes the prior art for not establishing this two-step process. And that even if conventional ways were used to do this, but not in the particular way claimed by the patent. And so the question is, how do you decide what's conventional and what's not conventional? It's not decided at the level of abstraction, it's decided based on the underlying facts. And here, the trial court never got into the underlying facts and just decided it all at a top level. Your honor, the district court did address the underlying facts and showed that these- Well, the district court said I don't have to because Berkheimer doesn't apply. Your honor, the district court also said that these alleged improvements were not tethered to the patents. And when we look at the amended complaint- Atrix makes clear that it doesn't have to be. Your honor- It doesn't have to be called out in the specification, the benefits. Your honor, they do not need to be explicitly called out as benefits. However, you need to be able to look at the amended complaint and the patent, which is incorporated by reference into the amended complaint. And you need to say, can we look at all this and draw a plausible inference that there was some unconventional improvement to computer functionality itself, not just improving the speed or efficiency- But why? I mean, if you're so sure that you're right, why don't we send it back and say, apply the correct law? I mean, even if you look at her 285 opinion, it's clear that she didn't care about step two. It was all about step one. So why don't we just send it back? And you can make those arguments there under the correct law, under Berkheimer and Atrix, as we have dictated. Your honor, the district court did correctly analyze the inventive concept, step of Alice in the opinion. And moreover, even if this court is dissatisfied with the district court's opinion, review is de novo. And when this court applies Atrix and Berkheimer, the correct answer is that there is nothing in the amended complaint or in the patents from which you can plausibly infer that the inventors did anything other than take previously manual steps in a process. Then conventional technologies behaving in conventional ways. And you're saying that's taking everything they say in the amended complaint as truth. Yes, your honor. Every factual allegation, you can even take every non-factual allegation as being true when you look at the complaint in isolation. But then when you apply this court's law and say, are these alleged techniques improvements in computer functionality? They're not. It doesn't improve the functioning of Bluetooth. It doesn't improve the functioning of the digital camera or the mobile device, or any of these other pervasive technologies. Improve the way they operate together? Your honor, there's no plausible allegation that it does improve the way that they operate together. All that the patent says, and all that can be plausibly alleged here is that you're saving the user time in saying that you no longer have to take out the memory stick and plug it in. You no longer have to go to the keyboard and type things in to upload it. And all you're doing is using conventional technologies behaving in their expected way. And your honor, in terms of the HTTP transfer protocol, there's only one brief reference to that in the specification at column 10, lines four to nine on appendix page 290. And there, they don't tell you anything about how to implement HTTP here. They simply say, you can use HTTP or XML. It doesn't matter. It's all pervasive, known, and flexible. And your honor, if I may make one more point about the already paired Bluetooth connection, that technique was described by Salesman's counsel in terms of this timing requirement where you would pair the Bluetooth connection and then you would transfer after acquired data. And then, Salesman says, you can leave that intact. You don't have to disconnect it. However, your honor, in addition to that not being plausibly alleged as an improvement to computer functionality itself, under this court's cases. Improvement of computer functionality was one phrasing that we used in BASCOM, but that's not the test. The test is some level of inventiveness, right? A sufficient inventive concept that makes the patent about significantly more than the abstract idea. And your honor, that inventive concept needs to be captured in the claims. And with respect to the idea of leaving the Bluetooth connection paired, that is not captured in the claims at all. All that the claims say is, you pair, and then you transfer data that was acquired after the pairing. There is no requirement that you then keep that paired Bluetooth connection alive. Even if it were in the claims, that would simply be saying, just leave the lights in the room on when you leave so that they'll already be on when you go back in. But all that you have is an attempt, just like an electric power in content extraction, to limit the application of this abstract idea to a particular type of data. All you're saying is that you pair the Bluetooth connection, then the type of data that you transfer using these conventional technologies acting in conventional ways is simply the data you acquired after the pairing. Thank you, counsel. Your time has expired. We'll hear some rebuttal time from Mr. Edwards. Thank you, Your Honor. Your Honor, going back to this issue of step two and the ordered combination, the district court did not really focus sufficiently on that. The district court was hung up on, in large part, by the statements and the specification about that you could use an ubiquitous cellular phone. But as the court has correctly pointed out, as we pointed out, there are aspects of this invention that are unconventional themselves. Can you go through them again? Yes. And they're listed. So, for example, start with paired connection, which Mr. Panakoski says might be original, but claims don't require it. So we can ignore that. Why is that wrong? Well, the claims do require it because they require the polling or the event notification or the request and response. Are those separate from pairing? They have to be done after the pairing is already established. They have to be done after. OK, so polling. So where is there an allegation that polling was unconventional? In the complaint, we call that out. And as far as where the arguments are, we- No, no, I'm really only interested in the complaint. OK, all right. So- Page and line number. Sure. All right, for example, I'm looking on page, it's appendix 2293. Yep. And it says, it's subparagraph E, using event notification, polling, and request return communication protocols over an already paired connection have the benefits from an efficient and automated upload system while conserving resources. Just to be clear, that says, it's perfectly consistent with saying relatively new, but still old stuff has benefits. That doesn't say it's unconventional by the time of this patent. That's why I'm trying to focus on the difference between the techniques and the benefits compared to something super old. Sure. So if you look at, and really starting at page 22, appendix 2288, this is in the patent, it goes through what's conventional. And then after it's explained what's conventional, which includes that you would not have the paired connection before doing this, and specifically it talks about Kennedy. And in Kennedy, and it's referring back to the prosecution history, which is also separately cited. But in Kennedy, you connect, send, disconnect. You don't have an established paired connection with this polling or event notification or request and response. Then it goes on, as you get on to pages 2292, it calls out these benefits and improvements. Actually, it starts at 2291. The benefits and improvements of these various aspects of the claim. And then it calls them out as being inventive. It calls them out as being benefits. It calls them out as being improvements. And the criticism was, well, that's just conclusory. Well, what's not conclusory, or what couldn't be called conclusory, is that when you identify what's conventional, you identify what is new and what we deem inventive, and you juxtapose that and say, when you take the inventive aspects here, these are the benefits you get. And it's not just saving time, as my colleague said. It's saving battery. It's leveraging the capabilities of this intermediate device. And it's conserving not just battery resources, but also other resources. But we have in our brief, there's a listing, just bullet point, of the unconventional aspects that the court can easily refer to. And they have the citations in the record for you. You can give me a page. Oh, a page in the brief? It's very easy to find. It's that section. It says unconventional. We have one section on benefits improvements, one section on unconventional aspects. And they're all laid out there. And they have citations to the record. Part of it comes from juxtaposing during prosecution against Kennedy. And part of it comes from the complaint itself. I'll just lastly point out, because we're almost out of time, my colleague says, well, it's conclusory. It's not plausible. But that's not what the district court found. What the district court did was the district court erred in refusing to consider these facts. She didn't find they were unplausible. She didn't find that they were too conclusory. She just said, I don't have to. She just misread Berkemer and Atrix. Thank you, counsel. We appreciate your argument. The case is submitted. Thank you.